## Concord Township v. Cornogg

*John R. Graham*, for plaintiff.

*Edward D. McLaughlin*, for intervening defendant.

DIGGINS, J., October 3, 1956.—The Township of Concord filed its complaint in equity alleging that defendants are maintaining on their land in Concord Township billboards in derogation of an ordinance adopted February 13, 1946. The record shows and it is

agreed that the signs in question had been erected prior to the enactment of the ordinance and the owners of the land contend that they have a preëxisting nonconforming use.

The township points to article X, sec. 1014, of the zoning code which provides that nonconforming signs may remain only for a period of six months after the enactment of the ordinance and it is also of interest to note that the ordinance carries the same provision regarding removal of buildings which constitute nonconforming uses. It would appear to us that the sole question here involved is whether or not these signs may remain as a preëxisting nonconforming use or are affected by article X, sec. 1014 of the zoning code, supra.

Testimony was taken before Diggins, J., on June 1, 1955, and the parties have now submitted requests for findings of fact and conclusions of law, supported by briefs.

From the testimony and exhibits, we make the following

*Findings of Fact*

1. The Township of Concord, Delaware County, is a duly constituted second class township validly created under the laws of the Commonwealth of Pennsylvania. In 1950, it had a population of approximately 1,941 and an area of 13.8 square miles.

2. Defendants are adult individuals residing in Pennsylvania.

3. Intervening defendant, General Outdoor Advertising Company, Inc., is a corporation organized pursuant to the laws of the State of New Jersey and is registered to do business in Pennsylvania with the Secretary of the Commonwealth.

4. Intervening defendant, General Outdoor Advertising Company, Inc., is lawfully engaged in the advertising business in Pennsylvania and in other States and Commonwealths of the United States.

5. The premises known as Locust Farms situate on the east side of Thornton Road and the north side of Baltimore Pike, in Concord Township, Delaware County, has been owned by the Cornogg family since March 28, 1906, and owned by the herein named defendants from August 26, 1937, to the present time.

6. The advertising signs of the General Outdoor Advertising Company, Inc., or its predecessor, Hessler, Inc., which are the subject of this suit, have been erected on Locust Farms by General Outdoor Advertising Company, Inc., or its predecessor, Hessler, Inc., since approximately January 1, 1926, which was 20 years prior to the enactment of the Zoning Ordinance of Concord Township and approximately 28 years prior to the commencement of the present action.

7. The billboards have been erected under five consecutive leases which paid the owners $20 per year until 1937 and from then on $50 per year. The last lease was made on February 20, 1951, for the term of one year with the right to the lessee to extend the lease for five years.

8. Article VII, sec. 700 of the said zoning ordinance provides as follows:

"In R1, R2 and R3 Residential Districts and B Business Districts signs may be erected and maintained only when in compliance with the provisions of this Article and any and all other ordinances and regulations of the Township of Concord relating to the erection, alteration or maintenance of signs and similar devices:

"1. *Signs advertising the sale or rental of the premises upon which they are erected* by the owner or a broker or other person interested in the sale or rental of such premises, may be erected and maintained, provided (1) the size of any such sign is not in excess of six (6) square feet, and (2) not more than two signs are placed upon any property in single and separate

ownership, unless such property fronts upon more than one street, in which event two such signs may be erected on each frontage.

"2. *Signs advertising the sale or development of the premises upon which they are erected,* when erected in connection with the development of the premises by a builder, contractor, developer, or other person interested in such sale or development, may be erected and maintained, provided (1) the size of any such sign is not in excess of twenty (20) square feet and (2) not more than two signs are placed upon any property in single and separate ownership, unless such property fronts upon more than one street, in which event two such signs may be erected on each frontage.

"3. *Signs indicating the location and direction of premises available for or in process of development,* but not erected upon such premises and having inscribed thereon the name of the owner, developer, builder, or agent may be erected and maintained, provided (1) the size of any such sign is not in excess of six (6) square feet, and not in excess of four (4) feet in length, and (2) not more than one such sign is erected on each five hundred (500) feet of street frontage.

"4. *Signs bearing the word 'Sold' or the word 'Rented'* with the name of the person effecting the sale or rental may be erected and maintained, provided, the conditions specified in subsection 1 hereof are complied with.

"5. *Signs of mechanics, painters, and other artisans may be erected* and maintained during the period such persons are performing *work on the premises* on which such signs are erected, provided (1) the size thereof is not in excess of six (6) square feet, and (2) such signs are removed promptly upon completion of the work.

"6. *Signs of schools, colleges, churches, hospitals, sanitariums, or other institutions of a similar nature*

may be erected and maintained, provided (1) the size of any such sign is not in excess of twenty (20) square feet and (2) not more than two signs are placed on a property in single and separate ownership, unless such property fronts upon more than one street, in which event two such signs may be erected on each frontage.

"7. *Signs advertising the sale of farm products* when permitted by this Ordinance, provided, (1) the size of any such sign is not in excess of twelve (12) square feet, (2) not more than two signs are used, and (3) the signs shall only be displayed when such products are on sale.

"8. In addition to other requirements of this Article every sign referred to herein must be constructed of durable materials, kept in good condition and repair, and not allowed to become dilapidated. Each such sign shall be removed when the circumstances leading to its erection no longer apply. Unless specifically authorized by other Ordinances or regulations of the Township of Concord, the construction or erection of any such signs within the street lines of public highways is hereby prohibited.

"9. *Direction signs,* provided (1) the size of any such sign is not in excess of six (6) square feet, and (2) it is within fifty (50) feet of the intersection of a side road or street, when such signs designate direction, distance and name of business, profession, or individual located on such side road or street."

9. Article VI, sec. 601, subsec. 11 of the said zoning ordinance provides as follows:

"B. Business Districts"

"(1) Signs when erected and maintained in accordance with the provisions of Article VII hereof; (2) signs advertising a business or other permitted use when located on the site where such use is conducted (3) provided the signs do not exceed three in number or ninety (90) square feet in total area for

each such site; (4) *ground signs such as billboards not exceeding ninety (90) square feet in area and not over twenty (20) feet in length, provided that not more than one such sign shall be placed on any one property with a frontage of less than two hundred (200) feet and not more than one such sign on each one hundred (100) feet of frontage for larger properties, and provided every such sign shall be located within two hundred (200) feet of a building (not accessory) used for other than Residential or agricultural uses."*

10. Article X, sec. 1014 of the said zoning ordinance provides as follows:

". . . A noncomforming sign or similar device may continue as herein provided for buildings of nonconforming use but only for a period of six (6) months. Every such sign shall be removed or changed to a permitted use not later than six (6) months from the time that such sign becomes a nonconforming use."

11. Intervening defendant, General Outdoor Advertising Company, Inc., has erected and maintains three billboards upon which are advertisements of Spruance Paints, Amoco Gas and Oil and Chevrolet automobiles, none of which are sold on the premises. These billboards are situate in an area zoned "B" business, which is zoned business to a depth of 200 feet, now 400 feet from the highway; the area beyond the said business is zoned R1 residential.

12. At the site of intervening defendant's signs, Locust Farms has a frontage of 300 feet more or less on the Baltimore Pike.

13. The sites of intervening defendant's advertising signs are on the Baltimore Pike, a heavily traveled highway known as U. S. Route No. 1.

14. The billboards, which are the subject of this suit, owned and constructed by intervening defendant, are constructed of good materials in a good and workmanlike manner.

15. The said advertising signs were rebuilt in 1937.

16. The advertising signs of the General Outdoor Advertising Company, Inc., are 12 feet high and 25 feet in length, which is the uniform standard sign throughout the United States.

17. The uniformity of the size of the General Outdoor Advertising Company, Inc., sign is vitally important to its business because the advertisers who use the said advertising medium have a standard size lithograph poster which is built to accommodate an advertising sign which is of uniform size throughout the United States.

18. The billboards are located on the northerly side of Baltimore Pike in an area zoned for business but used for residence and farming. The Dante Orphanage is directly across the pike on the southerly side. The Masonic Lodge is just west of the orphange. West of the billboards on the northerly side of the pike are three residences. There are three residences along Thornton Road which goes north from Baltimore Pike at a point just west of the billboards. East of the billboards on the pike, on the north side, is a residence and antique shop and on the south side is a roadside rest and an unimproved wooded area.

19. Traveling in a westwardly direction on the Baltimore Pike approaching the billboards, a vehicle would cross the Chester Creek and then would go up a very steep grade. Approaching the crest of the grade where the billboards are located, there is a curve to the right, followed by a very significant curve to the left and then after the crest the highway dips and curves to the right upgrade into Concordville.

20. None of the three billboards are located within 200 feet of a building (not accessory) used for other than residential or agricultural uses.

21. Defendants have been personally notified to

remove all signs in violation of the aforesaid ordinance and to date the signs have not been removed.

22. The advertising signs which are the subject of this suit are a preëxisting nonconforming use. . . .

Certain other requests for findings of fact presented by the township are based on an allegation that the signs constitute a nuisance and a hazard. This feature, however, we feel is not at issue and the requests immaterial, the question being whether or not the zoning ordinance effectively prohibits this use by defendants of their land.

### Discussion

The issue here is narrow and readily understandable, that is, whether or not a municipality may by a zoning ordinance eliminate from a designated area a preëxisting nonconforming use.

The importance of the issue here raised cannot be minimized. It goes to the very foundation of individual property rights in America. The Constitutions of Pennsylvania and of the United States of America speak clearly and authoritatively on this subject when they say that no citizen can be deprived of his property without due process of law. True, zoning ordinances in principle have been held constitutional in all the States and in the United States, and it is also true as pointed out in the brief of the township that certain of the States have held just such an ordinance as this to be constitutional when such ordinances allow a reasonable time for the removal of the conflicting use, the theory relied on being that the time provided must be such as to reasonably permit the owner to recoup the capital investment. Just how one is going to recoup a capital investment under the circumstances here is not made clear. Certainly the advertising company can within a reasonable period of time recoup the cost of erecting these signs but the real defendants here are the owners of the land, the ones named defendants

originally by the township. How are they going to recoup the value of the land which yields them a substantial annual income? The answer is they can't.

We recognize that this theory is a fiction and we recognize that such fiction is an integral part of our zoning law, and because courts have felt that the end justifies the means, fiction in zoning has been acknowledged even to the point where this court has almost been shocked on a few occasions, but never in Pennsylvania have owners of land been deprived of a preëxisting nonconforming use. Indeed a preëxisting nonconforming use in Pennsylvania has always and we think properly, so been treated as a vested property right: Haller Baking Company's Appeal, 295 Pa. 257, and cases following it.

The only case we can find on this question in Pennsylvania is one which arose in our neighboring Montgomery County: Drago v. Norristown Borough Board of Adjustment, 53 D. & C. 380, wherein the court said:

"While it is true that the appellate courts have become more liberal in upholding the constitutionality of zoning ordinances (see White's Appeal, 287 Pa. 259 (1926), and cases therein cited), yet no case seems to have gone so far as to sustain an ordinance, in effect legislating out of existence an existing legal business. Of course, if such business constitutes a nuisance there is a remedy . . . but not under the zoning ordinance.

"The fact that the present ordinance allows a grace period of three years does not affect this general principle of law", and the court struck down that phrase of the Norristown Borough Zoning Ordinance.

We have more than a passing sympathy with any State or municipality which seeks to control, limit, regulate or even obliterate all billboards, particularly in rural areas, and if a constitutional amendment

were presented to the people, we would support that amendment with vigor. To paraphrase Ogden Nash:

"I know that I shall never see
A billboard lovely as a tree
In fact unless the billboards fall
I'll never see a tree at all."

But I am as an individual considerably more consecrated to the constitutional safeguards of this government than I am a champion of the aesthetic beauties of this land, and as a lawyer and a judge I am sworn to preserve and protect the Constitution of the Commonwealth of Pennsylvania and of the United States of America.

It seems to us, therefore, that our clear and unequivocable duty is to declare article X, sec. 1014 to be unconstitutional and void and we, therefore, make the following

### Conclusions of Law

1. Article X, sec. 1014 of the Zoning Ordinance of the Township of Concord, enacted February 13, 1946, be and the same is hereby declared unconstitutional...

We, therefore, make the following

### Decree Nisi

And now, to wit, October 3, 1956, at 1 p.m., the above matter having come on to be heard,

It is ordered, adjudged and decreed that the complaint of the Township of Concord in the above entitled case be and the same is hereby dismissed; costs to be borne by the Township of Concord.

### Order

The prothonotary is directed to give notice immediately to the parties or their attorneys of record of the filing of the above decree nisi and if no exception be filed thereto within 20 days after the service of such notice to enter upon praecipe the said decree nisi as a final decree.